**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**FILED**

January 20, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: ___Christian Rodriguez___

DEPUTY

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 1:24-cv-00631-RP** |
| | § | |
| **KANAKUK KAMPS, INC., KANAKUK** | § | |
| **MISSOURI, INC., KANAKUK** | § | |
| **MINISTRIES, KANAKUK HERITAGE,** | § | |
| **INC., K-KAMPS, INC., KUKORP, LLC,** | § | |
| **JOE WHITE, and ACE AMERICAN** | § | |
| **INSURANCE COMPANY.** | § | |
| **Defendants.** | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Kanakuk Ministries, Kanakuk Heritage, Inc., and Joe White (collectively, "Defendants") move for summary judgment on all of Plaintiff John Doe's ("Plaintiff") claims in the Original Petition (Dkt. 1-2) pursuant to Fed. R. Civ. P. 56.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ("SOF") ................................. 2

    I.    The Parties ................................................................................ 2

    II.   Plaintiff's Interactions with Newman and Alleged Incidents of Sexual Abuse ................................................................................ 3

    III.  In November 2010, White Informed Plaintiff's Parents That Newman Had Identified Plaintiff on a List of Victims, Which Plaintiff Initially Denied Despite Awareness ................................................................ 5

    IV.  Plaintiff Did Not Pursue Information About Newman and Kanakuk Prior to 2022 ...................................................................................... 7

    V.   In September 2009, the Media Reported that a Parent Alerted Kanakuk in 2006 About Newman's Inappropriate Behavior, Including Swimming and Playing Nude ............................................................................ 8

    VI.  In 2010, Newman's Criminal Sentencing Hearing and Media Reports Indicated Kanakuk Had Known About Newman's Inappropriate Behavior Since 2003 ...................................................................................... 8

    VII.  Since 2011, Several Former Kanakuk Campers Have Filed Public Lawsuits—With Similar Allegations as Plaintiff's—Claiming Kanakuk Knew About Newman's Inappropriate Behavior Since 1999 ................................ 9

    VIII.  Plaintiff's Claims and Allegations .............................................. 11

LEGAL STANDARD ........................................................................................ 13

ARGUMENT .................................................................................................. 14

    I.    Plaintiff's Fraud Claim is Time-Barred (Count A) ................................ 14

         A.    The Discovery Rule: A Narrow Exception Applied Only in Exceptional Circumstances. ........................................................ 15

              1.    Inherently Undiscoverable: An Injury Is Not 'Inherently Undiscoverable' If the Relevant Facts Are Publicly Available or Constructively Known ............................................ 15

              2.    Objectively Verifiable: The Nexus Between the Injury and the Wrong Must Be Undisputed and Supported by Direct Physical Evidence ...................................................... 17

         B.    Fraudulent Concealment and Equitable Estoppel: Tolling Ceases When Plaintiff Has the Means of Knowledge .......................... 17

         C.    No Tolling or Equitable Theory Applies Because the Underlying Facts Were Publicly Available Before November 2014 .......................... 19

    II.   Plaintiff's Conspiracy Claim is Time-Barred (Count B) ...................... 21

III.   Plaintiff's Breach of Fiduciary Duty and Negligence-Based Claims Are Time-Barred (Counts C, D, E, F, and G) .......................................................... 22

     A.   Courts Consistently Reject Tolling Claims Arising from Sexual Abuse When the Plaintiff Was Aware of the Abuse.................................. 23

IV.   Even if Not Time-Barred, Plaintiff's Breach of Fiduciary Duty Still Claim Fails as a Matter of Law (Count C) ...................................................... 25

     A.   Texas Law Imposes High Bar for Establishing Fiduciary Duties............. 26

     B.   Plaintiff's Alleged Abuse Occurred Outside the Scope of Any Arguable Fiduciary Relationship ................................................ 27

V.   Even if Not Time-Barred, Plaintiff's Fraud Claim Fails as a Matter of Law (Count A) ........................................................................... 28

     A.   Plaintiff Cannot Establish Any Affirmative Material Misrepresentation.......................................................... 28

     B.   Plaintiff Cannot Establish Fraud by Non-Disclosure Because No Duty to Speak Existed ...................................................... 30

     C.   Plaintiff Cannot Establish Intent to Induce, Justifiable Reliance, or Causation.................................................................. 32

VI.   Even if Not Time-Barred, Plaintiff's Conspiracy Claim Still Fails as a Matter of Law (Count B) ....................................................... 33

VII.   Even if Not Time-Barred, Plaintiff's Negligence and Negligent Hiring Claims Still Fail as a Matter of Law (Counts D and E)......................................... 34

CONCLUSION................................................................................ 35

# INTRODUCTION

This case arises from allegations of sexual abuse dating back more than twenty years. Plaintiff, now 34, brings claims for fraud, conspiracy, breach of fiduciary duty, negligence, and related theories based on events and alleged misrepresentations or concealment from 1999 to 2003, as well as on Defendants' alleged knowledge and non-disclosure in 2010. The statute of limitations is not a mere technicality. It serves as a fundamental principle that ensures fairness and finality by preventing litigation of stale claims, protecting defendants from defending against decades-old events, and encouraging plaintiffs to act with reasonable diligence.

Here, Plaintiff seeks to avoid the statute of limitations by invoking the discovery rule, fraudulent concealment doctrine, and equitable estoppel, but Texas law applies these doctrines sparingly, and none are warranted here.

First, Plaintiff's fraud claim (Count A) is time-barred. Texas law imputes constructive knowledge or publicly available information to the plaintiff. The facts Plaintiff claims were concealed by Defendants were indisputably publicly available through news articles, criminal proceedings, and multiple lawsuits filed by other sexual abuse victims before the limitations period expired for Plaintiff. Because Plaintiff could have discovered this information with reasonable diligence, no tolling or equitable doctrine applies.

Second, Plaintiff's conspiracy claim (Count B) is also time-barred because it is entirely derivative of Plaintiff's fraud claim. Texas courts routinely dismiss conspiracy claims when the underlying tort is time-barred or legally insufficient. Since the underlying fraud claim is untimely, Plaintiff's conspiracy claim necessarily fails.

Third, Plaintiff's breach of fiduciary duty and negligence-based claims (Counts C, D, E, F, and G) are also time-barred. Texas courts consistently reject tolling in sexual abuse-related cases where, as here, the plaintiff knew of the abuse and the abuser's identity. The discovery rule does

not apply to injuries that are not inherently undiscoverable, and neither fraudulent concealment nor equitable estoppel toll the statute of limitations when the plaintiff was always aware of the abuse. Because Plaintiff was indisputably always of what had happened to him, including by the age of majority, no tolling or equitable doctrine applies.

The undisputed facts establish that Plaintiff's claims are time-barred, and no tolling or equitable doctrine revives them as a matter of law. Disregarding these limitations would undermine the statute's purpose and the predictability our legal system demands. Moreover, even if Plaintiff's claims were timely (which they are not), summary judgment remains appropriate because the claims fail on the merits for the reasons explained below. For these reasons, summary judgment on all of Plaintiff's claims is warranted under Fed. R. Civ. P. 56.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS ("SOF")[1]

### I.    The Parties

1.    Plaintiff's date of birth is ▮▮▮▮▮▮▮ 1989.[2]

2.    Plaintiff's parents are "Plaintiff father" and "Plaintiff's mother."[3] Plaintiff was born and raised in Texas. His parents have lived in Austin, Texas since about 1999.[4]

3.    Kanakuk Ministries is a Missouri nonprofit corporation based in Branson, Missouri. It operates various Christian camps for children, offering day, summer, and overnight programs.[5]

4.    Joe White ("White") has served as President of Kanakuk Heritage, Inc. and Kanakuk Ministries at various times. In 2010, White acted on behalf of Kanakuk Ministries,

---

[1] Filed herewith is an Appendix ("Appx.") containing all affidavits, deposition transcripts, and other documents supporting Defendants' Statement of Uncontroverted Material Facts.

[2] Ex. A, Pl. Rog Answers, p. 2.

[3] Plaintiff's parents are referred to as "Plaintiff's Father" and "Plaintiff's Mother." These generic designations are used to protect potentially personally identifiable information of Plaintiff.

[4] Ex. B, Pl. Dep., 9:4-18.

[5] Ex. C, Defs.' Am. Ans. (Dkt. 100), p. 9 at ¶ 26; Ex. D, Decl. of Jensen, p. 3.

serving as President, CEO, and Chairman of the Board.[6]

5.    Kanakuk Heritage, Inc., a Missouri corporation based in Branson, Missouri, employed Peter Newman ("Newman") (through its predecessor entities) from 1999 to 2008.[7]

6.    Newman did not have a criminal record when he applied for a part-time camp counselor position at Kanakuk Heritage, Inc. (then known as Kanakuk Kamps, Inc.) in 1995, or when he was hired full-time in 1999.[8]

## II.    Plaintiff's Interactions with Newman and Alleged Incidents of Sexual Abuse

7.    From 1997 to 2003, Plaintiff attended various summer Kanakuk camps in Missouri and Colorado, including K-Kountry, K-West, and K-Colorado, where he met Newman.[9]

8.    Although Plaintiff believes Newman was cultivating a close relationship with him at camp, Newman did not engage in any sexual acts or inappropriate touching towards Plaintiff while at camp. [10]

9.    In 1999, Plaintiff's parents invited Newman to visit and stay at their home in Texas. Plaintiff's mother arranged for Newman's visit.[11]

10.    In 2001, Plaintiff's parents invited Newman to join the family on weekend goose hunting trip, and he visited them again.[12]

11.    During this visit, Plaintiff does not recall Newman saying anything sexually inappropriate or touching him inappropriately.[13]

12.    In 2002, at the request of Plaintiff's parents, Newman visited and stayed at the

---

[6] Ex. C, Defs.' Am. Ans. (Dkt. 100), p. 5 at ¶ 8; Ex. D, Decl. of Jensen, p. 4.
[7] Ex. D, Decl. of Jensen, p. 5.
[8] Ex. E, Newman Dep., 161:13 – 162:8.
[9] Ex. B, Pl. Dep., 30:7 – 32:3, 34:19 – 35:2, 40:14 – 41:23.
[10] Ex. B, Pl. Dep., 36:10 – 38:17.
[11] Ex. B, Pl. Dep., 43:2 – 44:19; Ex. F, Mother Dep., 17:2 – 18:10.
[12] Ex. B, Pl. Dep., 47:10-18, 49:2-24.
[13] Ex. B, Pl. Dep., 49:5-9.

family's Blanco Ranch in Texas so he could baptize Plaintiff and his brother.[14]

13.    Plaintiff testified that during this visit, Newman encouraged Plaintiff to get naked in a hot tub, got naked himself, and talked about skinny dipping, adultery, and masturbation.[15]

14.    In 2003, Newman and his then-fiancé, Katie Buckles ("Katie"), stayed at Plaintiff's family home in Texas, arranged by one of Plaintiff's parents.[16]

15.    Katie described the visit as a ████████ and did not recall any Kanakuk activities taking place at Plaintiff's family's home or ranch.[17]

16.    Plaintiff's parents did not participate in any Kanakuk-related events or activities.[18]

17.    During the 2003 visit, Newman and Plaintiff slept in the same bedroom. Plaintiff claims that Newman told Plaintiff to go into the closet, where he explained how to masturbate and then did so himself.[19]

18.    In December 2003, Plaintiff traveled from Chicago to China on a mission trip with Newman, Katie, and other adults and children.[20]

19.    Plaintiff testified that during the flight, Newman sat next to Plaintiff and told him about a game he played with his brothers to see how quickly they could get an erection under a blanket. Newman then put a blanket over them and encouraged Plaintiff to masturbate to get an erection.[21]

20.    Katie previously lived in China after graduating from college, where she did

---

[14] Ex. B, Pl. Dep., 50:6 – 51:6.
[15] Ex. B, Pl. Dep., 52:19 – 54:13.
[16] Ex. B, Pl. Dep., 56:23 – 57:9, 57:17-21; Ex. G, Buckles Dep., 18:3-10; 47:5-10.
[17] Ex. G, Buckles Dep., 47:5 – 48:20.
[18] Ex. B, Pl. Dep., 45:7-9.
[19] Ex. B, Pl. Dep., 59:2-60:14.
[20] Ex. B, Pl. Dep., 64:17-65:22.
[21] Ex. B, Pl. Dep., 68:9-71:1.

ministry work with an organization called ████████████████ Newman was also involved with this organization.[22]

21.    Katie testified that she and Newman went on two mission trips to China, the first in December 2003. Newman testified that his trips to China were organized through Katie's connections as a former missionary in China, with itineraries set by the missionaries. He further testified that trip funding was raised by participants or through personal fundraising efforts. [23]

### III.    In November 2010, White Informed Plaintiff's Parents That Newman Had Identified Plaintiff on a List of Victims, Which Plaintiff Initially Denied Despite Awareness

22.    On September 14, 2009, the Prosecuting Attorney of Taney County, Missouri, charged Newman with four felony counts involving sexual offenses against minors.[24]

23.    In November 2010, White met and had dinner with Plaintiff's parents in Austin. Plaintiff was not there because he was away at college.[25]

24.    When asked about White's statements at the dinner, Plaintiff's father testified that White said there been some ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ " [26]

25.    Plaintiff's mother similarly testified her recollection of White's statements at the

---

[22] Ex. G, Buckles Dep., 10:18 – 12:4; Ex. E, Newman Dep., 182:5 – 183:20.
[23] Ex. G, Buckles Dep., 43:9 – 43:15; Ex. E, Newman Dep., 135:19 – 136:13.
[24] Ex. H, Taney County Prosecutor Docs.
[25] Ex. A, Pl. Rog Answers, p. 5; Ex. I, Father Dep., 44:19-24, 45:20-22; Ex. B, Pl. Dep., 76:3-13.
[26] Ex. I, Pl. Father Dep., 44:20 – 45:23.

dinner, as follows: ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████[27]

26.    Plaintiff's parents did not have contact with White after this meeting. They have met with White ███████████████████████ in total.[28]

27.    When Plaintiff came home for Thanksgiving break in November 2010, his parents told him that White had visited and said there was a list of kids Newman had abused, with Plaintiff's name was on it.[29]

28.    Plaintiff told his parents that ███████████████████ However, Plaintiff did recall what had happened with Newman and chose not to tell his parents.[30]

---

[27] Ex. F, Pl. Mother Dep., 29:9 – 30:8; 32:11-17.
[28] Ex. F, Pl. Mother Dep., 26:4-6; 54:10-14.
[29] Ex. F, Pl. Mother Dep., 30:24 – 31:17; Ex. B, Pl. Dep., 76:3 – 78:20; Ex. I, Pl. Father Dep., 45:20 – 46:20.
[30] Ex. B, Pl. Dep., 77:19 – 78:20; Ex. F, Pl. Mother Dep., 30:24 – 31:17; Ex. A, Pl. Rog Answers, p. 6.

29.    Plaintiff admits that he didn't take any legal action between the ages of 18 and 23, despite being aware of what had happened to him with Newman.[31]

## IV.    Plaintiff Did Not Pursue Information About Newman and Kanakuk Prior to 2022

30.    Plaintiff learned of Newman's arrest in 2009 from a social media post and described it as having ███████████████████

31.    Upon learning of the arrest, Plaintiff did not tell his parents what had happened to him because he had made a commitment to himself that he was not going to be a victim. He told himself that he ███████████████████████████"[33]

32.    Plaintiff knew there were other victims but did attempt to contact them.[34]

33.    Plaintiff did not follow the criminal proceeding of Newman.[35]

34.    Plaintiff didn't ████████ Kanakuk or Newman ██████ until 2022, when his sister texted about Newman in a family group text.[36]

35.    After that, Plaintiff started investigating Newman and Kanakuk online. He read depositions and news articles and began to suspect that Kanakuk had been ███████████ as early as 1999.[37]

36.    On May 19, 2022, Plaintiff claims he discovered that ██████████████ ███████████████████████████████████████████ ██████████████████ Plaintiff asserts that this discovery prompted him to pursue legal action.[38]

---

[31] Ex. B, Pl. Dep., 101:14 – 103:2; Ex. A, Pl. Rog Answers, p. 6.
[32] Ex. B, Pl. Dep., 81:16-19.
[33] Ex. B, Pl. Dep., 75:19 – 76:2; Ex. A, Pl. Rog Answers, p. 6.
[34] Ex. B, Pl. Dep., 89:25 – 90:6.
[35] Ex. B, Pl. Dep., 81:24 – 82:1.
[36] Ex. B, Pl. Dep., 82:10-19.
[37] Ex. B, Pl. Dep., 83:8-23.
[38] Ex. B, Pl. Dep. 80:4-12.

V.    **In September 2009, the Media Reported that a Parent Alerted Kanakuk in 2006 About Newman's Inappropriate Behavior, Including Swimming and Playing Nude**

37.    On September 30, 2009, the *Taney County Times* front page featured an article titled, "Sexual misconduct investigation continues – Parent says Kamp warned about Newman in 2006."[39]

38.    The article reports that in 2006, a parent of a female camper "informed Kanakuk Kamp officials about Newman's odd behavior toward young boys in 2006. Tackett said her daughter told her Newman was touching the boys, petting and rubbing them and taking them into the woods without supervision. Tackett said her daughter said Newman was molesting the boys. That's when she called Kanakuk Kamp officials."[40]

39.    The article further states, "They said they swam nude in the lake, played nude basketball at night and streaked nude at various locations in the camp with Newman, and "investigators found that Newman was conducting Bible study classes in his hot tub with underage boys . . . [h]e allegedly molested the teenage boys by getting them to masturbate during Bible sessions."[41]

VI.    **In 2010, Newman's Criminal Sentencing Hearing and Media Reports Indicated Kanakuk Had Known About Newman's Inappropriate Behavior Since 2003**

40.    On February 19, 2010, Prosecutor Jeff Merrell announced that Newman pleaded guilty.[42]

41.    On June 9, 2010, Newman was sentenced by Judge Mark E. Orr in the Circuit Court of Taney County, Missouri, receiving two life sentences plus 30 years.[43]

---

[39] Ex. J, *Taney County Times*, dated September 30, 2009.
[40] Ex. J, *Taney County Times*, dated September 30, 2009.
[41] Ex. J, *Taney County Times*, dated September 30, 2009.
[42] Ex. K, Taney County Prosecutor Notice, February 19, 2010.
[43] Ex. L, Sentencing Transcript, 121:10-122:4.

42.     At the sentencing hearing, Prosecutor Merrell referenced an agreement signed by Newman in October of 2003 "with his employer, the camps at Kanakuk, to basically be on a probationary period because of some questionable conduct with underaged boys."[44]

43.     On June 16, 2010, the *Taney County Times* published an article reporting on the sentencing titled "Former camp director receives multiple sentences – Kanakuk Kamp officials knew of inappropriate behavior since 2003."[45]

44.     The article states, in part, "Kanakuk Kamp officials knew in 2003 that then director Pete Newman had a problem but didn't fire the 34-year old who was sentenced Wednesday to double life sentences plus 30 years for molesting six boys – but there were more," and that the counts Newman was charged with "encompass[ed] illegal sexual acts dating back to 1999 with six boys." It also reports that Prosecutor Merrell referenced "a 2003 document where Newman was placed on probation by Kanakuk Kamp officials for inappropriate behavior while employed there."[46]

45.     Plaintiff admits that the *Taney County Times* article was public.[47]

46.     On June 10, 2010, the *Springfield News-Leader* also reported on Newman's sentencing, publishing an article titled "Former camp 'mentor' sentenced." The article described how Newman used his position at Kanakuk to abuse children.[48]

## VII.    Since 2011, Several Former Kanakuk Campers Have Filed Public Lawsuits—With Similar Allegations as Plaintiff's—Claiming Kanakuk Knew About Newman's Inappropriate Behavior Since 1999

47.     On March 11, 2011, a complaint titled *John Doe and Jane Doe as Next of Friends*

---

[44] Ex. L, Sentencing Transcript, 78:8-18.
[45] Ex. M, *Taney County Times*, June 16, 2010.
[46] Ex. M, *Taney County Times*, June 16, 2010.
[47] Ex. B, Pl. Dep., 88:13 - 89:2-8.
[48] Ex. N, *Springfield News-Leader*, June 10, 2010.

*for John Doe I, a Minor v. Kanakuk Ministries, et al.*, was filed in the U.S. District for the Northern District of Texas.[49]

48.     The John Doe I lawsuit alleges that "as early as 1999," Kanakuk officials knew Newman "was riding four-wheelers at the 'kamp' with nude 'kampers,'" but only placed him on probation. Similar incidents occurred "in or about 2003," when Newman was "streaking through the 'kamp' property with nude minor 'kampers.'"[50]

49.     On March 26, 2011, the *Springfield News-Leader* published an article titled "Lawsuit: Camp Ignored Red Flags," reporting on the John Doe I lawsuit, including allegations that, Kanakuk knew, as early as 1999, Newman rode four-wheelers nude and that he was placed on probation for inappropriate behavior.[51]

50.     On January 31, 2011, a petition titled *Doe J.G. v. K-Kamp, Inc., et al.* was filed in the Circuit Court of Taney County, Missouri. The petition alleges that "…Peter Daniel Newman's sexual misconduct was reported to Kanakuk in 1999."[52]

51.     On August 2, 2013, a complaint captioned *John Doe III v. Kanakuk Ministries, et al.* was filed in the U.S. District Court for the Northern District of Texas. The John Doe III complaint alleges that "as early as 1999," Kanakuk officials knew Newman "was in the nude, riding four-wheelers at the 'kamp' with nude boys, and swimming nude with minor boys," and that he "had private one-on-one sleep-overs with boys at Kanakuk Kamp."[53]

52.     On July 26, 2013, a petition titled *John Doe DK, Jane Doe DN, and John Doe DA*

---

[49] Ex. O, John Doe I Lawsuit, filed March 11, 2011.
[50] Ex. O, John Doe I Lawsuit, filed March 11, 2011.
[51] Ex. P, *Springfield News-Leader*, dated March 26, 2011.
[52] Ex. Q, J.G. Doe Lawsuit, filed January 31, 2011.
[53] Ex. R, John Doe III lawsuit, filed August 2, 2013.

*v. Kanakuk Ministries, et al.* was filed in the Circuit Court of Taney County Missouri.[54]

53. The John Doe DK petition alleges that Kanakuk officials "knew as early as 1999 that Defendant Newman had been disrobing and involving children attending Kanakuk camps in nude activities." It further states that "in 2003, Defendants White and Kanakuk had actual knowledge that Defendant Newman continued to engage in activities with children at Kanakuk camps that involved Defendant Newman and the children becoming naked together."[55]

54. On July 24, 2014, a petition titled *John Doe II v. Kanakuk Ministries, et al.*, was filed in the Circuit Court of Taney County, Missouri.[56]

55. The petition asserts that "[a]t least as early as 1999, Defendant Kanakuk Ministries and/or Kanakuk Heritage, Inc. knew that Newman, in the nude, was riding four-wheelers at the 'kamp' with nude boys, and swimming nude with minor boys." It further alleges, "before summer 2001, Defendants Kanakuk Ministries and/or Kanakuk Heritage knew that Defendant Newman had private one-on-one sleep-overs with boys at Kanakuk Kamps."[57]

56. Additionally, it claims that "in 2006, a mother whose daughter attended Kanakuk, contacted the Kamp directly to share concerns about her daughter's observations of Newman's inappropriate interaction with boys at camp…."[58]

57. The petition further asserts, "In a separate 2006 report, a father of another boy complained to Kris Cooper about Newman's late night calls and texts to his son."[59]

## VIII.    Plaintiff's Claims and Allegations

58. On June 7, 2024, Plaintiff, at age 34, filed an Original Petition against Kanakuk

---

[54] Ex. S, John Doe DK Lawsuit, filed July 26, 2013.
[55] Ex. S, John Doe DK Lawsuit, filed July 26, 2013.
[56] Ex. T, John Doe II Lawsuit, filed July 24, 2024.
[57] Ex. T, Jon Doe II Lawsuit, filed July 24, 2024.
[58] Ex. T, Jon Doe II Lawsuit, filed July 24, 2024.
[59] Ex. T, John Doe II Lawsuit, filed July 24, 2024.

Kamps, Inc., Kanakuk Missouri, Inc, Kanakuk Ministries, Kanakuk Heritage, Inc., K-Kamps, Inc., KUKORP, LLC, Joe White, and Ace American Insurance Company[60], alleging: (A) Fraud, (B) Conspiracy, (C), Breach of Fiduciary Duty, (D) Negligence, (E) Negligent Hiring, Supervision, Training, and Retention, (F) Negligent Undertaking, and (G) Gross Negligence.[61]

59.     Plaintiff's Original Petition alleges that Defendants made a representation to Plaintiff that they had no prior knowledge, before 2009, of Newman's previous sexual misconduct and abuse of children. Specifically, Plaintiff alleges that Defendants knew:

a. As early as 1999, that Newman was swimming and four-wheeling nude with young boys;
b. On July 6, 2001, Cunningham sent Newman a letter warning him to stop sleeping alone with children;
c. In 2003, Newman was swimming and playing basketball nude with young boys;
d. In 2003, a parent suspected and reported Newman of exhibiting unusual/sexual behavior toward her son at a father-son retreat after witnessing her son throw away his jeans after the retreat and proclaiming "I never want to see Pete again";
e. Cunningham told the Kanakuk Defendants to terminate Newman as early as 2003,
f. In 2006, Newman was making late night calls and texts to a camper:
g. As early as 2006, that Newman was "ministering" to children in his hot tub on a nightly basis; and
h. In 2006, a female camper reported to Defendants she had witnessed Newman's inappropriate behavior with a boy camper.[62]

60.     In June 2010, following Newman's sentencing, Defendants drafted a message to be sent to approximately 8,000 parents that have children attending that summer.[63]

61.     The "draft" letter, dated "June 17, 2010, states in part, "Several years ago, we became aware of situations in which Pete Newman engaged in immature and inappropriate

---

[60] On January 7, 2025, Ace American Insurance Company was dismissed from this action.  Dkt. 39. On January 16, 2026, the parties filed a joint Stipulation of Kanakuk Missouri, Inc., K-Kamps, Inc., and KUKORP, LLC. Dkt. 110.
[61] *See generally* Ex. U, Pl. Orig. Pet. (Dkt. 1-2); Ex. B, Pl. Dep., 36:10-37-3.
[62] Ex. U, Pl. Orig. Pet. (Dkt. 1-2), p. 17 at ¶ 106.
[63] Ex. C, Defs.' Am. Ans. (Dkt. 100), p. 20 at ¶ 78; Ex. V, "Draft" Letter, June 17, 2010.

behavior, including skinny dipping and playing basketball in the buff."[64]

62.    Plaintiff's Original Petition alleges that "[i]in response to threats and 'strong[] recommendations' made by Defendant Ace and Cannon, the Kanakuk Defendants chose not to send the proposed June 17, 2010, letter to Kanakuk families, and consequently, conspired with Defendant Ace to conceal the information Defendants knowledge of Newman's prior misconduct"[65]

63.    Plaintiff alleges that he would have asserted bodily injury, negligence, gross negligence, fraud, and conspiracy claims against all Defendants prior to him turning twenty but for the "false and material representations and active concealment and/or intentional omissions by Defendants regarding their knowledge of Newman's sexual misconduct."[66]

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation modified). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

---

[64] Ex. V, "Draft" Letter, June 17, 2010.
[65] Ex. U, Pl. Orig. Pet. (Dkt. 1-2), p. 14 at ¶ 86.
[66] Ex. U, Pl. Orig. Pet. (Dkt. 1-2), p. 15-16 at ¶¶ 93-94.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

## ARGUMENT

## I.    Plaintiff's Fraud Claim is Time-Barred (Count A)

Under Texas law, fraud claims must be filed within four years of the alleged fraud occurring. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). Plaintiff alleges that Defendants committed fraud by misrepresenting and/or concealing their prior knowledge of Newman's misconduct during a meeting between White and Plaintiff's parents in Austin, Texas, in November 2010, and by not sending a "draft" letter dated June 17, 2010. Thus, Plaintiff had until November 2014, at the latest, to file his fraud claim, but did not do so. Plaintiff seeks to circumvent the statute of limitations by citing the discovery rule, the doctrine of fraudulent concealment, and equitable estoppel, but none apply under the undisputed facts here.

A.    **The Discovery Rule: A Narrow Exception Applied Only in Exceptional Circumstances.**

The "discovery rule" provides a "very limited exception to statutes of limitations." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). "Applications of the [discovery] rule should be few and narrowly drawn." *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (citation modified). Whether the discovery rule applies is a question of law. *Alt Platform, Inc. v. Beckett Collectibles, LLC*, No. 3:22-CV-02867-N, 2024 WL 4376156, at *2 (N.D. Tex. Oct. 1, 2024) (citation modified).

Under the discovery rule, "the statute of limitations does not begin to run until the claimant knew or **should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act**." *Berry*, 646 S.W.3d at 524 (citation modified). In other words, "[t]he discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Id.* (internal citations and quotations omitted). Whether the plaintiff "should have known" of the facts underlying the claim is an "objective inquiry." *Id.*

Texas applies the discovery rule only in very limited cases; specifically, only when the plaintiff's injury is both (1) inherently undiscoverable and (2) objectively verifiable. *See Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 311 (5th Cir. 2019) (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)).

1.    *Inherently Undiscoverable: An Injury Is Not 'Inherently Undiscoverable' If the Relevant Facts Are Publicly Available or Constructively Known*

"Texas courts have set the inherently undiscoverable bar high, to the extent that the discovery rule will apply only where it is **nearly impossible** for the plaintiff to be aware of his injury at the time he is injured." *Sisoian v. Int'l. Bus. Machines Corp.*, No. A-14-CA-565-SS, 2014

WL 4161577, at *4 (W.D. Tex. Aug. 18, 2014) (citation modified). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry*, 646 S.W.3d at 524; *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). "Inherently undiscoverable does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period." *Wagner & Brown, Ltd.*, 58 S.W.3d at 735 (citation modified). Rather, an injury is "inherently undiscoverable" when "the plaintiff did not and **could not know** of the injury." *Colonial Penn Ins. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) (emphasis added).

Whether an injury is inherently undiscoverable is a "legal question" focused on "whether the ***type of injury*, rather than the *particular injury* at issue**, was discoverable." *Sandt v. Energy Maint. Servs. Grp. I, LLC*, 534 S.W.3d 626, 639 (Tex. App. 2017) (emphasis added). Injuries courts have found to be inherently undiscoverable include those where "the wrong and the injury were, by their nature, difficult or impossible to detect until circumstances changed," such as "undetectable medical malpractice, latent construction defects, false credit report[s], and corporate self-dealing." *Clark v. Dillard's, Inc.,* 460 S.W.3d 714, 722 (Tex. App. 2015) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)) (citation modified).

In several cases of injuries resulting from fraud, Texas Courts have found that "if the facts relating to the injury are readily available to the injured party, then the discovery rule does not apply." *Sandt*, 534 S.W.3d at 640; *Seismic Wells, L.L.C. v. Sinclair Cos.*, 749 F. App'x 225, 231 (5th Cir. 2018) ("Fraud-based claims in Texas generally accrue on the date the fraud is committed. Limitations may be tolled, however, if the fraud could not have been discovered by the plaintiff in the exercise of reasonable diligence.") (citation modified).

The exercise of "reasonable diligence" requires a plaintiff to "further investigate[] the

cause of his injuries" once he harbors "serious suspicions about the cause of his injury." *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 913 (Tex. 2015). "Knowledge of facts, conditions, or circumstances that would cause a reasonably prudent person to make an inquiry leading to the discovery of the cause of action is equivalent to knowledge of the cause of action for limitation purposes." *Bruning v. Hollowell*, No. 05-13-01033-CV, 2015 WL 1291378, at *3 (Tex. App. Mar. 23, 2015). Furthermore, "[r]easonable diligence requires that [plaintiffs] make themselves aware of **relevant information available in the public record**." *Shell Oil Co.*, 356 S.W.3d at 928 (emphasis added). "When there is **actual or constructive notice, or when information is readily accessible and publicly available, then, as a matter of law, the accrual of a fraud claim is not delayed."** *Berry*, 646 S.W.3d 516 at 524 (citation modified).

### 2. Objectively Verifiable: The Nexus Between the Injury and the Wrong Must Be Undisputed and Supported by Direct Physical Evidence

An injury "is objectively verifiable where direct, physical evidence, which in and of itself establishes negligence, is sufficient to prove an indisputable nexus between the injury and the wrong." *Bridges v. Metabolife Int'l, Inc.*, 119 Fed. App'x 660, 664 (5th Cir. 2005) (citing *S.V.*, 933 S.W.2d at 7). In other words, "[b]eing objectively verifiable means that the injury and the wrongful act 'were beyond dispute' and subject to verification through physical evidence." *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 585 (W.D. Tex. 2019) (citing *S.V.*, 933 S.W.2d at 7); *see also Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.,* No. 1:16-CV-37, 2018 WL 1415650, at *5 (E.D. Tex. Feb. 23, 2018).

### B. Fraudulent Concealment and Equitable Estoppel: Tolling Ceases When Plaintiff Has the Means of Knowledge

Under the doctrine of fraudulent concealment, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, [a statute of] limitations does not begin to run until the [plaintiff], using reasonable diligence, discovered or should have discovered

the injury." *Quiroz v. Hernandez*, 2025 WL 3768726, at *4 (5th Cir. Dec. 31, 2025) (citing *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021)). The doctrine effectively "suspend[s] the running of limitations until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Doe v. St. Stephen's Episcopal Sch.*, 382 F. App'x 386, 389-90 (5th Cir. 2010) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)).

The concealment requirement may be met by showing either that the wrongdoing was inherently self-concealing or that the defendant took affirmative steps to conceal existence. *See Martin v. Grehn*, 546 F. App'x 415, 420 (5th Cir. 2013). "An affirmative act of concealment requires more than mere silence." *Id.* Indeed, the defendant must perform some "trick or contrivance tending to exclude suspicion and prevent inquiry." *Id.*; *Lewis v. Danos*, 83 F.4th 948, 955 (5th Cir. 2023). As discussed in Section V.A below, the doctrine of fraudulent concealment does not apply because there is no evidence of any affirmative concealment by Defendants.

Fraudulent concealment—like the discovery rule—does not protect claims that "could have been discovered through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008); *Shell Oil Co.*, 356 S.W.3d at 927. "Reasonable diligence" for purposes of fraudulent concealment "requires the same awareness of the public record and reasonable investigation of red flags that is required in the discovery rule analysis." *Bergeron v. Select Comfort Corp.*, No. A-15-CV-00657-LY-ML, 2016 WL 155088, at *5 (W.D. Tex. Jan. 11, 2016) (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 208-09 (Tex. 2011)). In *Bergeron*, this court recognized that a fraud claim does not accrue later when the plaintiff has actual or constructive notice, or when the relevant information is "readily accessible and publicly available." *Id.* "**Knowledge is generally imputed for matters of 'public record.'**" *Peel v.*

*cPaperless, LLC,* No. 4:23-CV-02417, 2024 WL 1119411, at *5 n.14 (S.D. Tex. Mar. 14, 2024) (citing *Shell Oil Co.*, 356 S.W.3d at 928) (emphasis added). "**A matter may become public knowledge irrespective of whether it is disseminated to a broad or narrow audience**." *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 611 (Tex. App. 2014) (emphasis added).

While the concepts of fraudulent concealment and equitable estoppel are "technically distinct," they significantly overlap. *Lewis*, 83 F.4th at 955. Equitable tolling may be appropriate "when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Id.* This doctrine is a "narrow exception . . . that should be applied sparingly." *Id.* (citation modified). Similarly, equitable estoppel applies only when there "a false representation or concealment of material facts [and] the party to whom the statement was made must have been without knowledge or **means of knowledge of the real facts**." *St. Stephen's Episcopal Sch.,* 382 F. App'x at 390 (citation modified).

## C.    No Tolling or Equitable Theory Applies Because the Underlying Facts Were Publicly Available Before November 2014

For the Court's convenience, Demonstrative Exhibit A ("Demo. Ex. A") summarizes several facts Plaintiff claims he first learned in May 2022 and/or October 2023, as well as the public sources where this information was available before November 2014. As demonstrated, many of the facts Plaintiff alleges were fraudulently concealed or misrepresented were, in fact, reported in public sources.

For example, On September 30, 2009, the *Taney County Times* ran a front-page article, "**Sexual misconduct investigation. Parent says camp warned about Newman in 2006**," detailing Newman's inappropriate behavior, including swimming and playing basketball nude, and that a parent had warned Kanakuk about his misconduct in 2006.[67] Similarly, Plaintiff's Original

---

[67] SOF ¶ 37 (emphasis added).

Petition alleges that Defendants knew of, and concealed, their knowledge that "in 2006, a female camper reported to Kanakuk Defendants that she had witnessed Newman's inappropriate behavior with a boy camper."[68]

On June 16, 2010, the *Taney County Times* published, **"Former Camp director receives multiple sentences – Kanakuk Kamp officials knew of inappropriate behavior since 2003."[69]** The article plainly stated, "Kanakuk Kamp officials knew in 2003 that then-director Pete Newman had a problem but didn't fire [him]."[70] This directly mirrors Plaintiff's own allegations that Defendants knew of, and concealed, their knowledge that "in 2003, Kanakuk Defendants knew that Newman was swimming and playing basketball nude with young boys."

Moreover, beginning in 2011, several other victims of Newman have filed public lawsuits against Defendants, alleging Defendants knew about Newman's sexual misconduct against children. In these lawsuits, other plaintiffs assert nearly identical allegations Plaintiff now raises in this action. *See* Demo. Ex. A.

Plaintiff admits that the *Taney County Times* article was publicly available.[71] He also is aware of other lawsuits against Defendants and even reviewed depositions from those cases.[72] In sum, the underlying facts of Plaintiff's fraud claim were publicly available through lawsuits, news articles, and other public sources, and as established by law, knowledge of such public matters is "generally imputed." *See Peel*, 2024 WL 1119411, at *5 n.14.

Therefore, it would not be reasonable to infer that Plaintiff could not, or that it was "impossible", for him to discover the alleged fraud within the limitations period with reasonable

---

[68] SOF ¶ 59.
[69] SOF ¶ 43 (emphasis added).
[70] SOF ¶ 44.
[71] SOF ¶ 45.
[72] SOF ¶ 35.

diligence.[73] The record further demonstrates Plaintiff's ability to access publicly available sources; for example, he learned of Newman's 2009 arrest through social media and acknowledged that it ███████████████████ [74] Plaintiff bears a high burden to invoke the discovery rule, fraudulent concealment, or estoppel, and the undisputed facts negate any reasonable inference that he could meet that burden.[75] Accordingly, summary judgment should be granted as to Count A, as his fraud claim is time-barred as a matter of law.

## II.    **Plaintiff's Conspiracy Claim is Time-Barred (Count B)**

Under Texas law, because civil conspiracy "is a derivative tort that depends on participation in some underlying tort," the statute of limitations for civil conspiracy coincides with the limitations period of the underlying tort that is the object of the conspiracy. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138 (Tex. 2019) (citation modified). Here, the underlying tort is fraud, as Plaintiff alleges that Kanakuk and Ace American Insurance Company conspired to conceal information about Kanakuk's knowledge of Newman's prior sexual misconduct.[76] Therefore, Plaintiff's conspiracy claim, based on common law fraud, is therefore governed by a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).

As noted above, Plaintiff's fraud claim against Defendants is time-barred and not subject to tolling under the discovery rule, doctrine of fraudulent concealment, or equitable estoppel. Accordingly, Plaintiff's conspiracy claim also fails as a matter of law. *See, e.g., Cook-Bell v.*

---

[73] *See Sisoian*, 2014 WL 4161577, at *4; *Clark*, 460 S.W.3d at 772.

[74] SOF ¶ 30.

[75] In a similar case brought by another alleged victim of Newman against Defendants, the Circuit Court of Christian County, Missouri, held that the plaintiff could have discovered the alleged fraud within the limitations period using publicly available information, including articles from the *Taney County Times*. On November 18, 2024, the court granted summary judgment for Defendants on the fraud and civil conspiracy claims as time-barred. *See* Order filed January 17, 2025, in *Yandell v. Kanakuk Heritage, Inc., et al.*, Case No. 23CT-CC00088.

[76] SOF ¶ 62.

*Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 590 (N.D. Tex. 2012) (dismissing plaintiff's fraud claims and conspiracy claims as time-barred).

### III.    Plaintiff's Breach of Fiduciary Duty and Negligence-Based Claims Are Time-Barred (Counts C, D, E, F, and G)

Plaintiff's breach of fiduciary duty and negligence-based claims[77] arise from alleged sexual abuse that occurred over *22* years ago. Under Texas law, breach of fiduciary duty claims have a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.051. Negligence-based personal injury claims generally have a two-year limitations period. *Id*. at § 16.003(a). However, if the plaintiff was a minor at the time of the alleged injury, the statute of limitations does not begin to run until the plaintiff turns 18. *Id*. at § 16.001(a)(1), (b).

For personal injury claims arising from sexual assault, Texas law extends the statute of limitations to five years. *Id*. at § 16.0045(a) (prior to September 1, 2023). Although the legislature extended this period to 30 years effective September 1, 2023, the amendment does not apply retroactively to revive claims that were already time-barred as of its effective date.[78] Once the statute of limitations expires, defendants acquire a vested right to assert this defense, which cannot be impaired by subsequent legislative changes.[79]

---

[77] Plaintiff asserts the following negligence-based claims: Negligence (count D), Negligent Hiring, Supervision, Training, and Retention (count E), Negligent Undertaking (count F), and Gross Negligence (count G). SOF ¶ 58.

[78] *Doe v. Cath. Soc'y of Religious & Literary Educ.*, No. 05-21-00616-CV, 2022 WL 2352953, at *4 n.3 (Tex. App. June 30, 2022) (stating that the legislative amendments extending the statute of limitations for injuries arising from sexual offenses against children do not apply to causes of action accruing before their effective date).

[79] *Att'y Gen. v. Redding*, 60 S.W.3d 891, 893–94 (Tex. App. 2001) ("A defendant's right to rely on a statute of limitations vests when the limitations period expires . . . [t]hus, a statute extending limitations of a claim already barred by limitations is a retroactive law and violates the Texas Constitution."); *see also Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999) (holding that a statute extending the limitations period of a claim already barred by the statute of limitations violates the Texas Constitution's prohibition against retroactive laws).

Plaintiff turned 18 on ████████,[80] starting the four-year limitations for breach of fiduciary duty, which expired on ████████ 2011. Similarly, for personal injury claims arising from sexual assault, the five-year limitations period ended on ████████ 2012, when Plaintiff turned 23 (eleven years before the statute of limitations was extended). Plaintiff filed these claims well after the applicable deadlines, and no tolling theory revives his breach of fiduciary duty or negligence claims. They are therefore time-barred as a matter of law.

### A.    Courts Consistently Reject Tolling Claims Arising from Sexual Abuse When the Plaintiff Was Aware of the Abuse

The discovery rule does not toll Plaintiff's untimely breach of fiduciary duty and negligence claims because his injury was not "inherently undiscoverable." As noted above, whether an injury is inherently undiscoverable is a legal question based on the "type of injury." *Sandt*, 534 S.W.3d at 639. Here, Plaintiff's claims arise from alleged sexual abuse by Newman. No Texas court, or any court applying Texas law, has extended the discovery rule to sexual abuse-type cases where the plaintiff was always are of the abuse.[81]

The Fifth Circuit's decision in *Doe v. Henderson Indep. Sch. Dist.,* 237 F.3d 631, 2000 WL 1701752 (5th Cir. 2000) is highly relevant here. In *Henderson*, the plaintiffs brought negligence

---

[80] SOF ¶ 1.

[81] *See e.g., Placette v. M.G.S.L.,* No. 09-09-00410-CV, 2010 WL 1611018, at *5-6 (Tex. App. Apr. 22, 2010) (holding no exception to five-year statute of limitations for claims based on childhood sexual abuse where plaintiff was always aware of the abuse, but claimed not to be aware of causal connection between psychological difficulties and assaults); *Sanchez v. Archdiocese of San Antonio*, 873 S.W.2d 87, 89–91 (Tex. App. 1994) (defendant negated application of discovery rule by showing that plaintiff, by her own admission, knew of abuse when it occurred); *see also Exxon Corp. v. Emerald Oil & Gas Co*., *L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) ("After being put on notice of the alleged harm or injury-causing actions, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period."); *Doe v. Linam,* 225 F. Supp. 2d 731, 735 (N.D. Tex. 2002) ("Plaintiff candidly admits that he was aware of the alleged sexual abuse incident."); *Brothers v. Gilbert*, 950 S.W.2d 213, 216 (Tex. App. 1997) ("The victim was aware of the nonconsensual touchings when they occurred"); *Marshall v. First Baptist Church of Houston*, 949 S.W.2d 504, 507 (Tex. App. 1997) (plaintiff was "acutely aware of the sexual molestation incident").

and related claims against Henderson Independent School District (HISD) and associated parties based on sexual abuse by a teacher employed by HISD, which had occurred decades earlier while they were minors. *Id*. As in the present case, the plaintiffs in that case sought to invoke the discovery rule, fraudulent concealment, and equitable estoppel. *Id.* The court unequivocally rejected all three tolling theories. *Id.*

The court held that the discovery rule did not apply because the plaintiffs "knew they had been injured by Ward by the time of their eighteenth birthdays. They also knew that Ward was employed by HISD and the Church as that was the context in which they came in contact with Ward. This should have been sufficient knowledge by the plaintiffs that there was nothing left for them to 'discover' for tolling purposes." *Id*. The court further emphasized that mere concealment of additional information by the defendants did not toll the limitations period where the plaintiffs were always aware of the abuse and its perpetrator. *Id*. ("Although the plaintiffs argue that they were ignorant of the defendants' concealment, they were painfully aware of the abuse . . . .").

This reasoning is directly applicable here. Plaintiff was aware of the sexual abuse by Newman and knew that Newman was employed by a Kanakuk entity (as that was the context in which they met).[82] Furthermore, by 2009, Plaintiff was aware that Newman had been arrested for the sexual abuse of other minors, and by November 2010, Plaintiff had learned that there were "lists" of Newman's victims.[83] Thus, by the time Plaintiff reached the age of majority, he had actual knowledge of both his injury and the identity of the alleged tortfeasor, as well as the institutional context. Under *Henderson*, this forecloses any argument for tolling based on the discovery rule, as well as fraudulent concealment or equitable estoppel, as discussed below.

---

[82] SOF ¶¶ 7, 28-29.
[83] SOF ¶¶ 30; 32.

The Supreme Court of Texas has held that fraudulent concealment does not usually apply to sexual abuse-related cases. *See Doe v. Catholic Society of Religious and Literary Education*, No. 05-21-00616-CV, 2022 WL 2352953, at *8 (Tex. App. June 30, 2022) (citing *S.V.*, 933 S.W.2d at 8 (holding fraudulent concealment did not apply as "R. was not deceived into thinking that she was not being abused when she was. To the contrary, R.'s contention is that she was fully aware of the [abuse] . . . ."). Similarly here, Plaintiff was never misled about what had occurred to him; he simply chose not to disclose it.[84]

Equitable estoppel likewise does not apply. As discussed in Section I.B., equitable estoppel is only appropriate when the plaintiff demonstrates that he lacked knowledge, or the means to obtain knowledge, of the facts giving rise to his claim. *See St. Stephen's Episcopal Sch.*, 382 F. App'x at 390. Here, Plaintiff was always aware of the abuse and its perpetrator, and thus cannot establish the requisite lack of knowledge. *See e.g.*, *Linam*, 225 F. Supp. 2d at 736-37 (holding that equitable estoppel did not apply where the plaintiff, asserting claims such as negligence and breach of fiduciary duty based on sexual abuse, was aware of both the abuse and the resulting psychological harm). For the same reasons, the record evidence negates any claim that Plaintiff can make the required showing to estop Defendants from asserting the statute of limitations.

## IV.    Even if Not Time-Barred, Plaintiff's Breach of Fiduciary Duty Still Claim Fails as a Matter of Law (Count C)

As previously noted in Section III, the statute of limitations bars Plaintiff's breach of fiduciary duty claim. However, even if the Court determines otherwise, summary judgment remains proper because Plaintiff has failed to present any evidence supporting a critical element of his claim, that Defendants had a fiduciary relationship and a duty to protect Plaintiff from

---

[84] SOF ¶¶ 28-29; 31 ("[Plaintiff] told himself that he ███████████████████████ ███ "")

Newman's alleged misconduct and/or abuse off-Kanakuk premises. [85]

### A.    Texas Law Imposes High Bar for Establishing Fiduciary Duties

Texas courts have emphasized that "[a] fiduciary duty is an extraordinary one that is not lightly created." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 955 (Tex. App. 1994); *Areda v. S-W Transp., Inc.*, 365 S.W.3d 838, 841 (Tex. App. 2012); *Golden v. McNeal*, 78 S.W.3d 488, 493 (Tex. App. 2002). Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client, principal-agent, and partners. *See Areda*, 365 S.W.3d at 841.

In some circumstances, informal relationships may give rise to fiduciary duties, which can arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *See Areda,* 365 S.W.3d at 841; *Golden*, 78 S.W.3d at 493. However, Texas courts are "reluctant to recognize informal fiduciary relationships." *Armstrong v. Armstrong*, 570 S.W.3d 783, 790 (Tex. App. 2018). "[N]ot every relationship that involves a high degree of trust and confidence will give rise to a fiduciary duty . . . subjective trust is insufficient to create a fiduciary relationship . . ." *Id.*

There is no evidence that any fiduciary relationship arose between Plaintiff and Defendants. Plaintiff does not allege a formal fiduciary relationship; instead, he claims that White, Kanakuk Ministries, and Kanakuk Heritage, Inc., as youth-serving organizations entrusted by his parents, owed him a fiduciary duty to protect him from third-party misconduct. However, the record reflects that Plaintiff and his parents had only minimal contact with White, meeting him just a few times and not at all after November 2010.[86] Moreover, even assuming courts might recognize a fiduciary duty based on the temporary entrustment of a minor, such a duty would not

---

[85] To prevail on a breach of fiduciary duty claim, Plaintiff must prove: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached that fiduciary duty; and (3) that breach resulted in injury to the plaintiff or benefit to the defendant. *D & J Real Estate Services, Inc. v. Perkins*, 2015 WL 3507323, at *4 (Tex. App. June 4, 2015).

[86] SOF ¶ 26.

extend beyond the period of custody or create a perpetual fiduciary relationship.

### B.    Plaintiff's Alleged Abuse Occurred Outside the Scope of Any Arguable Fiduciary Relationship

Even when a fiduciary duty exists, that duty extends only to matters within the scope of the relationship that created it. *Fuqua v. Taylor*, 683 S.W.2d 735, 738 (Tex. App. 1984) ("Fiduciary duties, however, extend only to dealings within the scope of that relationship."); *see also Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 256 (Tex. App. 2018).

In *Doe v. Boys Clubs of Greater Dallas, Inc.*, the court squarely rejected the proposition that the Boys Club owed a general fiduciary duty to its minor members based on the trust placed by the parents. 868 S.W.2d at 955. The court did not make a specific or definitive finding that a fiduciary relationship existed; rather, it noted that the boys club's "agreement to organize recreational activities for the minor [members] and to properly supervise them during those activities *arguably* created a fiduciary relationship concerning that transaction." *Id*. Nonetheless, the court concluded that this was **" not sufficient to establish a fiduciary duty to advise [minors or their parents or grandparents] about activities not associated with the Club that transpired off of its premises."** *Id.* at 955. This narrow construction shows that even if a limited fiduciary relationship exists during specific supervised activities, it does not create a general fiduciary duty beyond those circumstances.

Here, all of Plaintiff's alleged sexual abuse incidents involving Newman occurred outside the scope of any arguable fiduciary relationship with Defendants. The undisputed facts show that no alleged abuse took place while Plaintiff was participating in any Kanakuk-sponsored, supervised camp or activity. Instead, Plaintiff admits that the alleged sexual abuse incidents happened in Texas at his family home and at his family's ranch.[87] Plaintiff's family did not host

---

[87] SOF, ¶¶ 12-15; 17.

any Kanakuk events at their home.[88] Rather, Newman was a guest of Plaintiff's family, and he visited them while he was in Texas.[89] Nor is there any evidence that Defendants sponsored, organized, or funded the China trip attended by Plaintiff. The trips were organized through personal and missionary contacts, primarily associated with another entity, and funding was raised by the participants or through personal fundraising efforts.[90]

Because the alleged sexual abuse incidents occurred outside the scope of any arguable fiduciary relationship with Defendants, Plaintiff cannot establish a fiduciary duty that was breached, and his claim fails as a matter of law. Texas law imposes fiduciary duties only in rare circumstances, and the record here falls far short of that high bar.

## V.    Even if Not Time-Barred, Plaintiff's Fraud Claim Fails as a Matter of Law (Count A)

Even if Plaintiff's fraud claim was not time-barred, summary judgment is still appropriate because Plaintiff cannot establish the essential elements of fraud under Texas law: (1) a false, material representation; (2) knowledge or recklessness as to its falsity; (3) intent to induce reliance; and (4) justifiable reliance causing injury. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). The record is devoid of evidence supporting these elements, particularly any material representation, intent to induce reliance, and justifiable reliance.

### A.    Plaintiff Cannot Establish Any Affirmative Material Misrepresentation.

A material misrepresentation is one that "a reasonable person would attach importance to and would be induced to act on . . . in determining his choice of actions in the transaction in question." *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 13-14 (Tex. App. 2016) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex.

---

[88] SOF, ¶¶ 15-16.
[89] SOF, ¶¶ 9, 14-16.
[90] SOF ¶¶ 20-21.

2011)). Importantly, "[**v]ague representations** cannot constitute a material representation." *Samson Lone Star*, 497 S.W.3d at 14 (emphasis added); *Hui Ye v. Xiang Zhang*, No. 4:18-cv-4729, 2020 WL 2521292, at *9 (S.D. Tex. May 15, 2020).

Here, the crux of Plaintiff's fraud claim is the allegation that White misrepresented his knowledge of Newman's prior misconduct during a dinner with Plaintiff's parents in Austin in November 2010. However, glaringly, the record is devoid of any evidence of an affirmative misrepresentation. Indeed, Plaintiff's father's own testimony about that dinner, set forth below, confirms that no such misrepresentation occurred.



Plaintiff's mother likewise testified that White informed her and her husband that Newman had been involved in some ███████████████ and identified the names of children involved in his sexual abuse, which included Plaintiff.[92] She described White's information as ████████[93]

---

[91] Ex. I, Pl. Father Dep., 44:19 – 45:19 (emphasis added).
[92] SOF ¶ 25.
[93] SOF ¶ 25.

29

There is simply no evidence that White affirmatively stated he was unaware of Newman's prior misconduct or denied that any prior misconducted had occurred. Both of Plaintiff's parents described White's statements as ██████ testifying only that he referenced ██████ or ██████████████ involving Newman and some boys, as well as the existence of two lists of victims, with Plaintiff's name appearing on one of them. Such vague and nonspecific remarks do not amount to a material misrepresentation and cannot support Plaintiff's fraud claim.[94]

### B.    Plaintiff Cannot Establish Fraud by Non-Disclosure Because No Duty to Speak Existed

Plaintiff also alleges that Defendants remained silent and failed to disclose and/or concealed their prior knowledge of Newman's misconduct. While Texas recognizes fraud by non-disclosure as a subset of fraud—where a party has a duty to disclose—Texas courts have consistently held that all the elements of fraud by affirmative misrepresentation must still be proven, except that the "misrepresentation" may be established by the non-disclosure or concealment of a material fact in light of a duty to disclose. *Shelby v. Conway*, No. 5:15CV41, 2016 WL 6804923, at *12 (E.D. Tex. May 25, 2016).

As a general rule, fraud by non-disclosure requires a duty to speak, which arises only from a fiduciary relationship. *Bazan v. Munoz*, 444 S.W.3d 110, 117-19 (Tex. App. 2014); *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003) ("[M]ere failure to disclose information is not actionable 'misrepresentation' under Texas law, absent a fiduciary relationship.") (citing *Mitchell Energy Corp. v. Samson Resources Co.*, 80 F.3d 976, 985 (5th Cir. 1996)). Whether a duty to disclose exists is a question of law. *Bazan*, 444 S.W.3d at 117.

---

[94] In addition, the lack of affirmative statements or steps to conceal forecloses any basis for Plaintiff to assert tolling by fraudulent concealment. *See Martin*, 546 F. App'x at 420 (5th Cir. 2013) ("An affirmative act of concealment requires more than mere silence.").

Defendants had no duty to disclose their alleged prior knowledge of Newman's misconduct to Plaintiff—whether at the November 2010 dinner or by not sending the "draft" June 17, 2010 letter to Kanakuk families. As discussed in Section IV, there was never a formal fiduciary relationship between Plaintiff and Defendants. Nor was there any informal confidential relationship that would give rise to a duty to disclose such information.

Specifically, with respect to White, as discussed above in Section IV.A, the record evidence does not support there was an informal fiduciary relationship with Plaintiff or his parents. Under Texas law, a subjective sense of trust alone is insufficient to establish a fiduciary duty; there must be evidence of a continuous, longstanding relationship that would justify one party's reliance on the other to act in their best interest. *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 416 (Tex. App. 1986); *see also Bazan*, 444 S.W.3d at 118 (holding that outside of formal fiduciary relationships, a confidential relationship may exist only if the parties have had a long-standing relationship that justifies one party relying on the other to act in their best interest).

Plaintiff's parents testified that they did not have a close relationship with White. In fact, after a single meeting in November 2010, they had no further contact with him.[95] Altogether, they met White on only ███████████████████████[96] This limited interaction falls far short of the longstanding relationship of trust and confidence required to establish an informal fiduciary duty. Accordingly, White had no duty to disclose or inform Plaintiff's parents (whether in June or November 2010) of his prior knowledge of Newman's misconduct.

Plaintiff's claim that Kanakuk Heritage and Kanakuk Ministries had a duty to disclose is equally unsupported. There is no evidence of an informal, confidential relationship that would

---

[95] SOF ¶ 26.
[96] SOF ¶ 26.

have imposed a duty on either entity to actively inform Plaintiff's parents of Newman's prior misconduct—whether at the November 2010 dinner or through the unsent "draft" June 2010 letter. In fact, White, as a representative of Kanakuk Ministries, *did* notify Plaintiff's parents that Plaintiff was on a list of children involved in Newman's sexual abuse.[97] No evidence or legal authority establishes that White or the entities had any further duty to disclose additional information. Accordingly, because Defendants had no duty to disclose, Plaintiff's claim for fraud by non-disclosure fails as a matter of law.

      **C.**      **Plaintiff Cannot Establish Intent to Induce, Justifiable Reliance, or Causation**

Even if a misrepresentation were shown, Plaintiff cannot establish that (3) Defendants intended to induce Plaintiff to act on any representation; or (4) Plaintiff justifiably relied on the alleged misrepresentation in a manner that caused the purported injury. *See Barrow-Shaver,* 590 S.W.3d at 496. First, Plaintiff cannot point to any evidence that White, or any representative of Defendants, acted with the requisite intent or knew of any special likelihood that Plaintiff or his parents would rely on any alleged misrepresentation or concealment.

Next, Plaintiff cannot show that any reliance was justifiable. While justifiable reliance may present a question of fact for a jury, "justifiable reliance may be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Barrow-Shaver.*, 590 S.W.3d at 497 (citation modified). Here, the undisputed evidence shows that any information Plaintiff claims was misrepresented or concealed was publicly available. By November 2010, Newman had already been arrested and charged, and multiple news articles had reported allegations that Kanakuk had prior knowledge of Newman's misconduct. Lawsuits containing similar allegations were also pending. *See* Demo. Ex. A. Plaintiff admits he accessed information about Newman's arrest

---

[97] SOF ¶¶ 24-25.

online.[98] Given this abundance of public information, any reliance by Plaintiff on White's alleged statements or omissions would not be reasonably justified as a matter of law. [99]

Finally, the record evidence negates that Plaintiff's supposed reliance on White's statements caused his claimed injury. Plaintiff asserts that White's alleged misrepresentation caused him to not pursue any civil claims against Defendants.[100] However, at the time of that conversation, Plaintiff's parents were unaware that he was a victim of Newman. When confronted by his parents after their conversation with White, Plaintiff stated that ████████████████ ██[101] Plaintiff made a conscious choice not to disclose his abuse by Newman, committing to himself that he would ███████████████████████[102] Therefore, there is no causation between any alleged misrepresentation by White and Plaintiff's decision not to pursue legal action, as Plaintiff had already made a deliberate choice not to disclose his abuse by Newman.

## VI.    Even if Not Time-Barred, Plaintiff's Conspiracy Claim Still Fails as a Matter of Law (Count B)

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Because civil conspiracy is a derivative claim, proof of a civil conspiracy <u>also</u> requires proof of an underlying tort. *Mary E. Bivins Found. v. Highland Cap. Mgmt. L.P.*, 451 S.W.3d 104, 112 (Tex. App. 2014). Therefore, if the underlying tort claim fails, the claim for civil conspiracy must also fail. *Id.*

---

[98] SOF ¶ 30.
[99] *Performance Dealerships, L.P. v. Mitsubishi Motors N. Am., Inc.*, No. CIV.A. H-05-4211, 2006 WL 964730, at *4 (S.D. Tex. Apr. 12, 2006) ("The issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience.") (citation modified).
[100] SOF ¶ 63.
[101] SOF ¶ 28.
[102] SOF ¶ 31.

Here, the basis of Plaintiff's conspiracy claim is fraudulent nondisclosure, as Plaintiff alleges that Defendants conspired to conceal Defendants' knowledge of Newman's prior misconduct by not disclosing the draft June 2010 letter. As discussed above, this claim fails because Defendants had no duty to disclose the information in the draft June 2010 letter, there is no evidence Defendants intended for Plaintiff to rely on any alleged non-disclosure, and there is no causal link between the alleged nondisclosure and Plaintiff's purported injury. Because the underlying claim of fraudulent nondisclosure fails, Plaintiff's conspiracy claim also fails, and dismissal of Count B is warranted.[103]

## VII.    Even if Not Time-Barred, Plaintiff's Negligence and Negligent Hiring Claims Still Fail as a Matter of Law (Counts D and E)

In addition to being time-barred, as argued above in Section III, Plaintiff's ordinary negligence claim (Count D) and negligent hiring claim (Count E) also fail on the merits as a matter of law. To establish negligence, Texas law requires "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Whether a legal duty exists is a question of law. *Id*. Plaintiff's negligence claim fails because it is well-settled that "a person has no legal duty to protect another from the criminal acts of a third person or to control the conduct of another." *Doe v. Yum! Brands, Inc.,* 639 S.W.3d 214, 226 (Tex. App. 2021). Moreover, employers are ordinarily not liable for "torts committed by off-duty employees except when the torts were committed on the employer's premises or with the employer's chattels." *Escoto,* 288 S.W.3d at 404-05.

---

[103] *See, e.g., United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020) (affirming judgment as a matter of law on plaintiffs' civil conspiracy claims because plaintiffs could not establish underlying tortious or wrongful conduct); *Sasson on behalf of 78 Acres, LP & Inwood Partners, LP v. Schatte*, No. 01-14-00633-CV, 2015 WL 1967526, at *4 (Tex. App. Apr. 30, 2015) (same).

While Texas law does recognize limited exceptions to the general rule—such as claims based on respondeat superior or negligent hiring, training, supervision, and retention—Plaintiff's claims under these theories are unavailing. To prevail on a negligent hiring or supervision claim, Plaintiff must show that the injury was **"a result of the employee's employment."** *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2022 WL 672692, at *5 (E.D. Tex. Mar. 7, 2022) (emphasis added); *see Boys Clubs*, 868 S.W.2d at 950 ("If the law did not require such a connection, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee.") (citation modified). Here, summary judgment is warranted for Kanakuk Ministries and White, as neither employed Newman during the alleged abuse.[104] Only Kanakuk Heritage, Inc. could potentially be liable, but Plaintiff's claim still fails as a matter of law.

Under Texas law, an employer is only liable for negligent hiring if there is something in the employee's background that would cause a reasonable employer not to hire them. *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App. 2008). Here, Newman did not have any criminal record upon his hire by Kanakuk Heritage, Inc.[105] Thus, at the time Kanakuk Heritage, Inc. hired Newman, he had no criminal record or history that would have alerted the company to any risk of sexual abuse. Accordingly, there was no basis for Kanakuk Heritage, Inc. to foresee or prevent the alleged misconduct, and Plaintiff's negligent hiring claim fails as a matter of law.

## CONCLUSION

Based on the arguments above and the undisputed facts, Defendants respectfully request that the Court grant summary judgment in their favor and dismiss Plaintiff's claims with prejudice.

---

[104] SOF ¶ 5.
[105] SOF ¶ 6.

Dated: January 16, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Rachel S. Kim-Walter*
Lorinda Holloway        TX Bar No. 00798264
111 Congress Avenue, Suite 1400
Austin, TX 78701
Office: (512) 479-1149
Fax No: (512) 479-1101
lorinda.holloway@huschblackwell.com

AND

Bryan O. Wade            *admitted pro hac vice*
3810 E. Sunshine St., Suite 300
Springfield, MO  65809
Office: (417) 268-4000
Fax No: (417) 268-4040
Bryan.wade@huschblackwell.com

AND

Rachel S. Kim-Walter     *admitted pro hac vice*
Allison E. Minicky        *admitted pro hac vice*
4801 Main Street, Suite 1000
Kansas City, MO 64112
Office: (816) 983-8000
Fax No.: (816) 983-8080
rachel.kimwalter@huschblackwell.com
allison.minicky@huschblackwell.com

**ATTORNEYS FOR
DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record who have appeared in this case via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on January 16, 2026.


*/s/ Rachel S. Kim-Walter*
**ATTORNEY FOR DEFENDANTS**