IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:24-CV-631-RP |
| | § | |
| KANAKUK HERITAGE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants Kanakuk Heritage, Inc., Kanakuk Ministries, and Joe White's ("Defendants") Motion for Summary Judgment, (Dkt. 115). Plaintiff John Doe ("Plaintiff") filed a response, (Dkt. 118), and Defendants filed a reply, (Dkt. 120). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that Defendants' Motion should be granted.

## I. BACKGROUND

This case arises out of the sexual assault and abuse Plaintiff experienced during his childhood at a youth summer camp run by Defendants. Plaintiff pled the following facts in his Complaint, as described in the Court's previous order. (Order on Mot. to Dismiss, Dkt. 39, at 1−2). Plaintiff's abuser, Pete Newman, was an employee at the summer camp he attended, Kanakuk Camps, which was run by Defendants. Plaintiff cites record evidence that Newman sexually abused and assaulted him between 1999 and 2003 on numerous occasions. (Resp., Dkt. 118, at 6−9). Newman, in 2009, confessed to multiple crimes against multiple children, including Plaintiff, and pled guilty for sexual misconduct in 2010, receiving two life sentences in Missouri. (*Id.* at 11). Plaintiff alleges that Defendant Joe White ("White"), President of Kanakuk Kamp, met with his parents in 2010 and told them that he did not know of Newman's sexual misconduct at the time

1

Plaintiff attended the camp. (*Id.* at 14). Plaintiff alleges that White's representation that he and the other Defendants had no knowledge of the abuse led him not to pursue personal injury litigation against them. (*Id.*). Now, Plaintiff alleges it was revealed to him that Defendants, including White, in fact had extensive knowledge of Newman's sexual misconduct at the time. (*Id.*). Plaintiff alleges he learned via an online article and documents released publicly through litigation that in 2010, Defendants intended to write a letter to families of campers admitting they learned of Newman's abuse "several years ago." (*Id.* at 11). Plaintiff alleges Defendants decided not to send the proposed letter because of advice from their insurer. (Order on Mot. to Dismiss, Dkt. 39, at 1−2). Plaintiff brought claims against Defendants and their insurer for fraud and conspiracy, and against Defendants for breach of fiduciary duty, negligence, and gross negligence. (*Id.*). The Court previously granted the insurer's Motion to Dismiss, (*id.* at 9), so only the claims against the Defendants (who managed the camp) proceeded.

In support of their Motion for Summary Judgment, Defendants provide a list of articles and lawsuits publicly available between 2009 and 2014, including articles that detail reports made to Defendants about the sexual misconduct Newman committed. (Defs.' Exh. A, Dkt. 111, at 1−4). Those reports included the following:

- A *Springfield News-Leader* article, dated March 26, 2011, titled "Lawsuit: Camp Ignored Red Flags," reporting on a lawsuit against Defendants alleging that as early as 1999, Defendants knew of Newman's abuse and that he was placed on probation for inappropriate behavior;

- A *Taney County Times* article, dated June 16, 2010, titled "Former camp director receives multiple sentences – Kanakuk Kamp officials knew of inappropriate behavior since 2003"; and

- A *Taney County Times* article, dated September 30, 2009, stating that "Parents of a female camper "informed Kanakuk Kamp officials about Newman's odd behavior toward young boys in 2006. Tackett said her daughter told her Newman was touching the boys, petting and rubbing them and taking them into the woods without supervision. Tackett said her daughter said Newman was molesting the boys. That's when she called Kanakuk Kamp officials."

(*Id.*). Defendants also show that lawsuits were filed against Kanakuk officials in January 2011, March 2011, July 2013, August 2013, and July 2014, alleging that Newman's abuse was reported to Defendants dating back to at least 2001. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to

"sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

The Court finds that there is no material dispute of fact that Plaintiff's claims are time-barred, and as such, the Court will grant Defendants' Motion for Summary Judgment. Defendants move for summary judgment on the grounds that Plaintiff was required to bring his claims no later than November 2014 (for his fraud and conspiracy claims), September 2011 (for his breach of fiduciary duty claims), and September 2012 (for his remaining claims) based on the relevant statutes of limitations for each claim, because there is no material dispute of fact that a tolling doctrine does not apply. (Mot., Dkt. 115, at 14–23). The Court agrees.

Turning first to Plaintiff's fraud and conspiracy claims, under Texas law, fraud claims must be filed within four years of the alleged fraud occurring. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). As described above, Plaintiff alleges that Defendants committed fraud by misrepresenting and/or concealing their prior knowledge of Newman's misconduct during a meeting between White and Plaintiff's parents in Austin, Texas, in 2010, and by not sending a draft letter which would have confessed their knowledge to families of victims. Taking as true Plaintiff's argument that this sequence of events constitutes fraud and conspiracy, Plaintiff had until November 2014, at the latest, to file his fraud and conspiracy claims, unless an applicable tolling doctrine applies.

Further, it is undisputed that Plaintiff's breach of fiduciary duty and negligence-based claims (negligence, negligent hiring, supervision, training, and retention, negligent undertaking, and gross limitations) arise from sexual abuse and camp management actions that occurred more than five years ago. Under Texas law, breach of fiduciary duty claims have a four-year statute of limitations.

Tex. Civ. Prac. & Rem. Code § 16.051. Negligence-based personal injury claims generally have a two-year statute of limitations. *Id.* at § 16.003(a). However, if the plaintiff was a minor at the time of the alleged injury, the statute of limitations does not begin to run until the plaintiff turns eighteen. *Id.* at § 16.001(a)(1), (b). For personal injury claims arising from sexual assault, Texas law extends the statute of limitations to five years. *Id.* at § 16.0045(a) (prior to September 1, 2023).[1] Plaintiff turned eighteen on ████████████ 2007, commencing the four-year limitations for a breach of fiduciary duty claim, which expired on ████████████, 2011. Similarly, for personal injury claims arising from sexual assault, the five-year limitations period ended on ████████████, 2012. Those statutes of limitations would apply unless a tolling doctrine applies to Plaintiff's claims.

Plaintiff argues that two doctrines toll the statute of limitations in his case. First, Plaintiff argues that the discovery rule defers the accrual of the cause of action. Under Texas law, the discovery rule applies when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "'Discovery' does not mean 'actual knowledge of the particulars of a cause of action,' but whether the plaintiff has 'knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights.'" *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 402–03 (5th Cir. 1998) (quoting *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140, 1141–42 (5th Cir. 1997)). An injury is "inherently undiscoverable" when "the plaintiff did not and could not know of the injury." *Colonial Penn Ins. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) (internal quotation marks omitted). By contrast, "[i]nherently undiscoverable

---

[1] Subsequent legislative enactments made effective on September 1, 2023 extended that period to thirty years but do not apply retroactively to claims that were time-barred prior to September 1, 2023. *Doe v. Cath. Soc'y of Religious & Literary Educ.*, No. 05-21-00616-CV, 2022 WL 2352953, at *4 n.3 (Tex. App. June 30, 2022) (stating that the legislative amendments extending the statute of limitations for injuries arising from sexual offenses against children do not apply to causes of action accruing before their effective date).

does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period." *Wagner & Brown, Ltd.*, 58 S.W.3d at 735.

"To be 'inherently undiscoverable,' an injury need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise . . . An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). "[T]he discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). Due diligence requires a plaintiff to "further investigate[] the cause of his injuries" once he or she harbors "serious suspicions about the cause of his [or her] injury." *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 913 (Tex. 2015). "Knowledge is generally imputed for matters of public record." *Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 1119411, at *5 (S.D. Tex. Mar. 14, 2024).

The Court finds that Plaintiff could have, through reasonable due diligence, discovered the facts giving rise to each cause of action before 2011, 2012, or 2014 such that the injury was not inherently undiscoverable, and discovery rule does not apply. It is undisputed that Plaintiff did not pursue information about Newman and Defendants' actions until 2022, after receiving a text from his sister inquiring about Newman. (Mot. Summ. J., Dkt. 115, at 10; Resp., Dkt. 118, at 13). Plaintiff also notes that he did not see any articles implicating Defendants in covering up Newman's abuse until after May 2022. (Resp., Dkt. 118, at 21). However, as described above, the Court must consider information that would have been publicly available to Plaintiff had he investigated this topic, not only the knowledge he actually had. Defendants provide undisputed record evidence that both Newman's abuse—and information about how Defendants were aware of Newman's abuse—were in the public record from 2009 through 2014. (Defs.' Exh. A, Dkt. 111, at 1−4). Defendants provide

6

a list of articles in the Taney County Times from 2009 and 2010 detailing the fact that Defendants were aware of Newman's abuse. (*Id.*). This includes a September 30, 2009 article stating that parents of campers "informed Kanakuk Kamp officials about Newman's odd behavior toward young boys in 2006." (*Id.* at 3–4). It also includes a June 16, 2010 article titled "Former camp director receives multiple sentences – Kanakuk Kamp officials knew of inappropriate behavior since 2003," which reported that "Kanakuk Kamp officials knew in 2003 that then director Pete Newman had a problem but didn't fire the 34-year old who was sentenced Wednesday to double life sentences plus 30 years for molesting six boys – but there were more." (*Id.* at 3). Another article was published on June 10, 2010, in the Springfield News-Leader that described how Newman used his position at the camp to sexually abuse children. (*Id.*). Newman's abuse has also been the subject of several lawsuits alleging Defendants' awareness of Newman's behavior beginning in January 2011 and March 2011, i.e., before the expiration of the statute of limitations for all claims, which Plaintiff also does not dispute. (Defs.' Exh. A, Dkt. 111, at 1).[2]

Plaintiff admits that these newspaper articles were publicly available but argues that news "from a local paper in a county of less than 60,000 residents is hardly the kind of 'publicly available' information that should have put Plaintiff – who has never lived in that county – on notice that he needed to investigate the Defendants' actions further." (Resp., Dkt. 118, at 26). However, Plaintiff cites no authority to support the notion that a local newspaper (as opposed to a national publication) cannot provide the type of publicly available information that makes an injury discoverable for purposes of the discovery rule. By contrast, Texas law makes clear that "[a] matter may become public knowledge irrespective of whether it is disseminated to a broad or narrow audience." *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 611 (Tex. App. 2014). As to the lawsuits against

---

[2] Along these same lines, a state court in Missouri has held that a plaintiff's claims against Defendants were time barred based on news articles available at the time. *Yandell v. Kanakuk Heritage, Inc.*, 731 S.W.3d 500, 503 (Mo. Ct. App. 2026).

Defendants, Plaintiff argues that those lawsuits did not put him on notice of the facts needed to investigate Defendants' fraud, conspiracy, and negligence further because their filings were available via a "payment based PACER service that is not available to the general public." (Resp., Dkt. 118, at 26). Again, however, the fact that the relevant information was on PACER does not give rise to a material dispute of fact as to whether it was "difficult" or "nearly impossible" to find; Plaintiff cites no authority to suggest a paywall makes a service inaccessible for purposes of the discovery rule. *See Sisoian v. Int'l. Bus. Machines Corp.*, No. A-14-CA-565-SS, 2014 WL 4161577, at *4 (W.D. Tex. Aug. 18, 2014). Because the facts that give rise to his claims were publicly available in news reporting and otherwise in the public record, the Court concludes that they were not inherently undiscoverable to him and that the discovery rule does not toll the statute of limitations.

Plaintiff also argues that the fraudulent concealment doctrine tolls his claims. Under the doctrine of fraudulent concealment, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, [a statute of] limitations does not begin to run until the [plaintiff], using reasonable diligence, discovered or should have discovered the injury." *Quiroz v. Hernandez*, 2025 WL 3768726, at *4 (5th Cir. Dec. 31, 2025) (quoting *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021)). The doctrine effectively "suspend[s] the running of limitations until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Doe v. St. Stephen's Episcopal Sch.*, 382 F. App'x 386, 389−90 (5th Cir. 2010) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)). The concealment requirement may be met by showing either that the wrongdoing was inherently self-concealing or that the defendant took affirmative steps to conceal existence. *See Martin v. Grehn*, 546 F. App'x 415, 420 (5th Cir. 2013). "An affirmative act of concealment requires more than mere silence" and the defendant must perform some "trick or contrivance tending to exclude suspicion and prevent inquiry." *Id.*; *see also Lewis v. Danos*, 83 F.4th 948, 955 (5th Cir. 2023).

Plaintiff has not shown a material dispute of fact that the fraudulent concealment doctrine applies, both because he does not cite a material dispute of fact as to the existence of an affirmative act of concealment, and because the relevant information was elsewhere in the public record. Plaintiff does not cite facts to give rise to an inference that Defendants actively concealed information in the 2010 meeting between White and his parents. Instead, Plaintiff cites record evidence that (1) in 2010, Defendants wrote but did not send a letter which would have revealed their prior knowledge of the abuse to families of campers; and (2) White was vague as to the details of Newman's abuse at the 2010 meeting, suggested it was not as severe as sexual abuse as other campers by placing Plaintiff on a "B List" whereas other victims were on an "A List," and said, "I can't talk about it, there's things I can't talk about." (Resp., Dkt. 118, at 12). However, these allegations do not concern affirmative acts of concealment. Further, Plaintiff cites deposition testimony from his mother that White did not tell her of certain acts of Newman's sexual abuse which had occurred in 1999 and 2003, (Sur-reply, Dkt. 125-1, at 10), but again, this does not support an inference of an *affirmative* act of concealment of the relevant information toward Plaintiff.

Because Plaintiff does not offer more evidence beyond "conclusory statements, speculation, and unsubstantiated assertions" which "are not competent summary judgment evidence" to support the notion that Defendants took an affirmative act of concealment, Plaintiff does not cite a material dispute of fact as to whether Defendants took an affirmative act of concealment to prevent him from bringing his claims before the expiry of the statute of limitations. Plaintiff cites evidence, in the form of citation to his own deposition testimony, that "Plaintiff Joe White made it clear to Plaintiff's parents that he had no prior knowledge of any sort of misconduct by Newman" and that "Plaintiff took Defendant Joe White's words as the truth." (Resp., Dkt. 118, at 2 (citing Ex. H, Plaintiff Depo, 153:2−25)). However, Plaintiff was not present at that meeting; therefore, through this testimony, he was sharing his own impressions as to what was said at the meeting. Plaintiff cites a news article

from 2021 which describes Defendants' representations as follows: "Following Newman's conviction, the narrative from the camp was relatively simple. They had been shocked to find a bad apple in their midst. They had fired him immediately." (Sur-reply, Dkt. 125-1, at 10 (citing Ex. AA, They Aren't Who You Think They Are, at 000952)). But this article, generally commenting on Defendants' "narrative," does not give rise to the inference of any specific act of active concealment of Defendants toward Plaintiff. Finally, Plaintiff asserts that Defendants "concealed the facts through the use of non-disclosure agreements" with other victims, but the evidence they cite to support that assertion is a news article stating "[i]t became apparent to [another victim upon noticing the minimal public reporting about Newman] that dozens of victims had been coerced into signing NDAs and settling out of court," without more. (*id.* (citing Ex. V to Depo. of Joe White, Ex. 25 At 000592)). The Court agrees that coercing victims to signing NDAs could constitute an affirmative act of concealment, but Plaintiff has not provided evidence beyond conclusory statements, speculation, and unsubstantiated assertions that this occurred.

Even if Plaintiff had cited evidence of a material dispute of fact as to the existence of an act of active concealment, fraudulent concealment—like the discovery rule—does not protect claims that "could have been discovered through the exercise of reasonable diligence." *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008). "Reasonable diligence" for purposes of fraudulent concealment "requires the same awareness of the public record and reasonable investigation of red flags that is required in the discovery rule analysis." *Bergeron v. Select Comfort Corp.*, No. A-15-CV-00657-LY-ML, 2016 WL 155088, at *5 (W.D. Tex. Jan. 11, 2016) (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 208–09 (Tex. 2011)). As described above, although the newspaper articles describing the abuse may have been disseminated to a more local audience, such that Plaintiff did not come across it without investigation, this doctrine requires a plaintiff to not "close his eyes and simply wait for facts supporting such a claim to come to his attention," but rather to exercise reasonable

10

diligence in investigating a potential claim. *McGrath v. Brewer*, No. 24-50335, 2025 WL 2828853, at *4 (5th Cir. Oct. 6, 2025) (citation modified). In other words, even accepting Plaintiff's arguments that Defendants concealed the information through their failure to inform Plaintiff's parents of the extent of his abuse, Plaintiff still has the burden of reasonable diligence to ascertain information that is available in the public record. The Court finds that Plaintiff could have found the information giving rise to his claims (i.e., that Defendants were aware of Newman's behavior) before either 2011, 2012, or 2014 based on the information in the public record described above, and as such, the fraudulent concealment doctrine does not apply to Plaintiff's claims.

Specific to Plaintiff's negligence-based and breach of fiduciary duty claims against Defendants, Plaintiff argues that the statute of limitations accrues starting "when he discovered Defendants' role in causing his assault," not when the injury occurred. (Resp., Dkt. 118, at 27). To support that argument, Plaintiff argues his claims are analogous to those in *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 616 (W.D. Tex. 2017), where the plaintiff brought negligence claims related to her sexual assault by another student because she did not become aware of her university's deliberate indifference to sexual misconduct in its football program until the release of a report in 2016 documenting the university's deficiencies in handling Title IX matters. In that case, this Court held that genuine fact issues precluded summary judgment because "she had no reason to know of Baylor's role in causing the assault until 2016" when that Title IX report came to light. *Id.* Here, however, the Court finds that Defendants' role in maintaining Newman's employment despite their knowledge of his behavior was a matter of public record prior to the expiry of the statute of limitations. Indeed, unlike the plaintiff in *Baylor*, Plaintiff does not offer evidence that new reporting came out in 2022 that revealed the extent of Defendants' knowledge of Newman's abuse and subsequent negligence—but rather that in 2022, Plaintiff, upon being reminded of Newman by his sister texting him about it, "began to investigate Newman online" and "came across a website called

11

'Facts About Kanakuk' that chronologically described the historical abuse at the camp," then "started investigating further and came across other news articles and learned there was a pattern of historical institutional abuse and it seemed like Kanakuk was hiding things they knew as early as 1999." (Resp., Dkt. 118, at 13). In other words, Plaintiff does not argue that the information on this website became public after 2011 or 2012; only that he came across it in 2022. This differs from a situation where, as in *Baylor*, new information emerged revealing Defendants' negligence which was not available to the plaintiff previously.

Rather than being comparable to *Hernandez*, this case is more like *King-White v. Humble Independent School District*, where the plaintiff and her mother sued the school district after her teacher sexually abused her while she was a minor and argued that the statute of limitations should begin after she learned of the district's role. 803 F.3d 754, 762 (5th Cir. 2015). The Fifth Circuit rejected the plaintiff's argument that she only later discovered the school district's negligence. Applying the statute of limitations under Texas law for personal injury actions, the Court held that "[a] plaintiff need not know that she has a legal cause of action" for her claim to accrue; "she need know only the facts that would ultimately support a claim." *Id.* "[A]wareness" for accrual purposes does *not* mean actual knowledge; rather, all that must be shown is the existence of "circumstances [that] would lead a reasonable person to investigate further." *Id.* (emphasis in original). While the plaintiff and her mother may not have known about all complaints of other parents or certain school district policies, they knew of the abuse and the teacher's relationship with the school, which would have reasonably led a plaintiff to investigate the school's role further before the expiry of the statute of limitations. (*Id.* at 762–73). As in *King-White*, Plaintiff was aware of Newman's abuse, and Plaintiff was aware of Newman's employment and connection with Defendants, to a sufficient extent that he could have conducted his investigation of the facts prior to the expiry of the statute of limitations and learned the facts that give rise to his claims. This Court in *Hernandez* also differentiated *King-White* on the

basis that Hernandez involved student-on-student conduct, unlike in *King-White*, where the abuser was an employee of the school district making the district's role more apparent at the time. *Hernandez*, 247 F. Supp.3d at 616. Here, as in *King-White*, Plaintiff was aware of Newman's ongoing employment with Defendants and was therefore on notice of their potential negligence to an extent that would have reasonably led him to investigate his claims further prior to 2011, 2012, or 2014.

For the reasons described above, the Court finds that there is no material dispute of fact that Plaintiff's claims are time-barred and will grant Defendants' Motion for Summary Judgment as a result.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the Defendants' Motion for Summary Judgment, (Dkt. 115), is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply, (Dkt. 125), is **GRANTED** for purposes of allowing Plaintiff to respond to Defendants' objections to his summary judgment evidence.

**IT IS FURTHER ORDERED** that because this Order relies on information that this Court has maintained under seal, that the Clerk of the Court file the Order under seal. The parties are directed to propose any redactions to this Order to maintain the sealed status of that information on or before **June 19, 2026**. The Court will then file a redacted, public version of this Order based on the parties' joint proposal.

**SIGNED** on June 12, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

13